UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES B. COTTON, Sr., | ) | Case No. 1:08CV1079 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM |
| CLEVELAND MUN. SCHOOL | ) | AND ORDER |
| DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge McHargh |
| | ) | |

The plaintiff Charles B. Cotton, Sr. ("Cotton"), has filed an amended complaint pro se, against defendant Cleveland Municipal School District ("the District"). (Doc. 34.)  In his amended complaint, Cotton alleges nine counts against the defendant:

1) age discrimination, in violation of 29 U.S.C. § 623(a);

2) age discrimination, in violation of Ohio Rev. Code § 4112.02(A);

3) racial discrimination, in violation of 42 U.S.C. § 2000e-2;

4) racial discrimination, in violation of Ohio Rev. Code § 4112.02(A);

5) sex discrimination, in violation of 42 U.S.C. § 2000e-2;

6) sex discrimination, in violation of Ohio Rev. Code § 4112.02(A);

7) violations of the January 2006 arbitration and award;

8) violations of the 2003-2004 Collective Bargaining Agreement and the

2003-2004 individual contracts with Charles B. Cotton; and

9) violation of the Ohio Workers Compensation Statute and self-insured status with the State of Ohio.  (Doc. 34.)

The defendant School District has filed a motion to dismiss counts 1, 2, 3, 5, 7, 8, and 9.  (Doc. 38.)  Cotton has filed a memorandum in opposition.  (Doc. 39.)


## I.  FACTUAL BACKGROUND

Cotton is an African American male, who taught in the Cleveland Public Schools for over 34 years.  For most of his career, he taught Industrial Arts in the field of Career Technology.  In April 2004, Cotton was laid off by the District as part of an extensive reduction in force resulting from a budget deficit of $68,000,000.  See generally doc. 34, Am.Compl, at ¶¶ 1-3; doc. 38, at 1-2.

While he was laid off, Cotton applied for an open position with the District as a CAD instructor, but another, younger individual was hired for the position.  (Doc. 34, at ¶¶ 7-8.)  Cotton "elected to retire in order to withdraw funds form his 401K in order to satisfy existing household expenses including mortgage, college tuition, etc."  Id. at ¶ 9.

The lay-offs led to a grievance by the Cleveland Teachers Union, Local 279 of the American Federation of Teachers, on behalf of several members, including Cotton.  During the arbitration proceedings, the District acknowledged that several individuals, including Cotton, had been laid off in violation of the 2003-2004 Collective Bargaining Agreement between the Union and the District.  As a result,

2

an Arbitrated Agreement was reached, and Cotton was reinstated.  Cotton was also awarded back wages, benefits, and a payment of $1,882.34 to make him whole for any actuarial loss to his pension.  See generally doc. 34, at ¶¶ 4-5, 10-13; doc. 38, at 2.

However, Cotton and several others were recalled as Special Education teachers, rather than as vocational education teachers, on the basis that Career Tech was slated for elimination.  (Doc. 34, at ¶¶ 4-5, 10-13; doc. 38, at 2.)  In accordance with the Arbitrated Agreement, Cotton was given a temporary license to teach special education by the Ohio Department of Education.  (Doc. 34, at ¶¶ 13-14; doc. 38, at 2-3.)  Cotton returned to the classroom as a Special Education Instructor in October 2005.  (Doc. 34, at ¶ 15.)

In February 2006, Cotton was attacked by a student in the classroom and suffered a contusion on his lower leg, along with mental stress.  Cotton alleges that the District failed to file a workers' compensation claim on his behalf, or to offer him workers' compensation benefits.  (Doc. 34, at ¶¶ 17-18.)

Cotton alleges that the Arbitrated Agreement did not provide "a date definite" by which he was required to meet the requirements to teach as a Special Education Instructor.  (Doc. 34, at ¶ 14.)  He further alleges that the District failed to provide him with a supplemental teaching license for Special Education for the 2006-2007 school term, in accordance with the agreement.  Id. at ¶ 21.  Cotton claims that he was "prevented" from returning to his classroom from Nov. 6, 2006, to Feb. 26, 2007, because of the District's failure to provide him with proper

licensure, and because of this, he lost approximately $21,000 in wages.  Id. at ¶¶ 22-
23.  He states that the District then provided him with supplemental licensure in
February 2007, backdated to the beginning of the school term, without
compensating him for his lost wages.  Id. at ¶¶ 24-26.

The District responds that Cotton failed to pass his state-mandated Special
Education Praxis exam, and that he was discharged from his Special Education
teaching position in 2007 because he failed "to procure a proper license to permit
him to continue to teach Special Education."  (Doc. 38, at 2; see also doc. 34, at ¶¶
29-32.)  Cotton's employment was continued, but as a Building Substitute Teacher,
and then an Area Substitute Teacher.[1]  (Doc. 34, at ¶¶ 32, 34; doc. 38, at 2-3.)
Cotton alleges he was permanently licensed in Technical Education, and there were
several positions in Technical Education for which he was well qualified.  (Doc. 34,
at ¶¶ 33, 35.)

On Jan. 28, 2008, Cotton filed a Charge of Discrimination with the Ohio Civil
Rights Commission and the Equal Employment Opportunity Commission ("EEOC"),
alleging race and age discrimination.  In particular, Cotton alleged:

> I was employed by Respondent [the District] for more than 30 years
> until I was improperly laid off in 2004.  Pursuant to a grievance
> award, I was reinstated to the position of Teacher of SEED,
> Intervention Specialist effective October 31, 2005.  As an Intervention
> Specialist I was subjected to different terms and conditions of
> employment including, but not limited to, Respondent's failure to

---

[1] Cotton's reassignment in May 2008 as an Area-Wide Substitute occurred
after his EEOC charge was filed, and indeed, after this suit was filed.  Cotton does
not allege retaliation.

provide me in a timely manner with a license, mentor or aide.
Additionally, I was laid off on November 6, 2006 after Respondent
failed to submit my license information.  On December 12, 2007, I was
discharged.

(Doc. 34, PX A.)  On Jan. 30, 2008, the EEOC issued a right-to-sue letter.  (Doc. 38,

DX A.)  Cotton filed suit in this court on Apr. 28, 2008.  (Doc. 1.)


## II.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The District has filed a motion to dismiss counts 1, 2, 3, 5, 7, 8, and 9.  (Doc.
38.)  Until recently, the standard for a motion to dismiss for failure to state a claim
upon which relief can be granted was that the motion establish, beyond a
reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);
Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied,
516 U.S. 1158 (1996).  However, in Bell Atlantic Corp. v. Twombly, 550 U.S. 554
(2007), the Supreme Court modified the standard, in particular the "no set of facts"
phrase.

The Court in Twombly had granted certiorari in order "to address the proper
standard for pleading an antitrust conspiracy through allegations of parallel
conduct."  Twombly, 550 U.S. at 553.  The Court noted that "proceeding to antitrust
discovery can be expensive," particularly in the case before it, where "plaintiffs
represent a putative class of at least 90 percent of all subscribers to local telephone
or high speed Internet service in the continental United States."  Id. at 559.

5

The Court's subsequent ruling abrogating Conley, however, went far beyond the limited context of conspiracy and antitrust pleadings.  See, e.g., Twombly, 550 U.S. at 572-588 (Stevens, J, dissenting); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (Twombly "disavowed" Conley standard).  See generally Silva v. Hollis, No. 3:08CV2589, 2009 WL 1270297, at *1 (N.D. Ohio May 5, 2009) (Carr, J.) (applying Twombly); Dhillon v. Cleveland Clinic Found., No. 5:07CV3505, 2009 WL 901870, at *1-*2 (N.D. Ohio Mar. 31, 2009) (Adams, J.) (same); Frost v. Boyle, No. 1:06 CV 2649, 2008 WL 650323 (N.D. Ohio Mar. 5, 2008) (Oliver, J.) (Twombly abrogated Conley standard).

The Court in Twombly characterized Conley's heretofore universally-accepted[2] "no set of facts" phrase as ". . . best forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563; Cleveland Fire Fighters, 502 F.3d at 548 (quoting Twombly).  The Court stated that Conley merely "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Twombly, 550 U.S. at 563.  The question inevitably arises:  How then is a claim "stated adequately"?

---

[2] See, e.g., Twombly, 550 U.S. at 577-578 (citing cases) (Stevens, J., dissenting); O'Brien v. University Community Tenants Union, Inc., 42 Ohio St.2d 242, 327 N.E.2d 753 (1975) (syllabus).

6

The Twombly Court asserted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Twombly, 550 U.S. at 555 (citations omitted).  See also Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009); Cleveland Fire Fighters, 502 F.3d at 548 (quoting Twombly).  The Court protested that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Compare 5 Wright & Miller, Federal Practice and Procedure, § 1216 (2004) ("Conspicuously absent from Federal Rule 8(a)(2) is the requirement found in the [earlier] codes that the pleader set forth the 'facts' constituting a 'cause of action'.")  Justice Stevens, in dissent, characterized the decision as a "dramatic departure from settled procedural law."  Twombly, 550 U.S. at 573 (Stevens, J, dissenting).

One panel of the Sixth Circuit was clearly reluctant to abandon the Conley standard, and suggested that perhaps Twombly is intended to be "limited to expensive, complicated litigation" such as the antitrust conspiracy case in Twombly. See, e.g., Gunasekera, 551 F.3d at 466.  The panel noted that the Supreme Court applied a more traditional "fair notice" standard in Erickson v. Pardus, which cites to Twombly.  Gunasekera, 551 F.3d at 466 (quoting Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197 (2007)).  The court suggests that in considering a motion to

dismiss, Twombley and Erickson be read in conjunction with one another.[3]  See also Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488-489 (6th Cir. 2009) (per curiam).

As the Second Circuit notes, "the appropriate standard for assessing the sufficiency of pleadings under Rule 8(a) is the source of some uncertainty" following the Twombly decision.  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008); see also Gunasekera, 551 F.3d at 466.  The Second Circuit, noting the Supreme Court's "mixed signals," concluded that the Court now requires "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citing Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).

The Supreme Court affirmed that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8.  The function of

---

[3] Erickson was a pro se prisoner's Section 1983 action, and the Supreme Court noted in its limited ruling that pro se complaints are "to be liberally construed."  Erickson, 551 U.S. 89, 127 S.Ct. at 2200; see also National Bus. Dev. Serv., Inc. v. American Credit Educ. & Consulting Inc., No. 07-2290, 2008 WL 4772074 (6th Cir. Oct. 31, 2008) (rejecting application of Erickson, noting it concerned pro se complaint, held to less stringent standard).  It is unclear what guidance the Erickson decision should provide to this court, given the Supreme Court's rather extensive discussion of a new procedural standard in Bell Atlantic Corp. v. Twombly.

the court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses.  Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and tests the sufficiency of the complaint.  Miller, 50 F.3d at 377; State ex rel. Hanson v. Guernsey County Bd. of Comm'rs, 65 Ohio St.3d 545, 548, 605 N.E.2d 378, 381 (1992).  The court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true.  Lindsay v. Yates, 498 F.3d 434, 438 (6th Cir. 2007); Central States Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252, 255 (6th Cir. 1997).

The allegations of a complaint drafted by pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991).  See also McNeil v. United States, 508 U.S. 106, 113 (1993); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).


III.  COUNTS ONE, THREE AND FIVE

The first count of the amended complaint alleges age discrimination, in violation of federal law, 29 U.S.C. § 623(a).  (Doc. 34, at ¶¶ 40-48.)  The third count alleges racial discrimination, in violation of federal law, 42 U.S.C. § 2000e-2.  Id. at ¶¶ 55-59.  The fifth count alleges sex discrimination, in violation of federal law, 42 U.S.C. § 2000e-2.  Id. at ¶¶ 65-69.

9

The District argues that Cotton's Title VII and Age Discrimination in Employment Act (ADEA) claims are without merit because he either failed to timely exhaust all of his administrative remedies, or he failed to allege facts sufficient to raise claims of discrimination.[4]  (Doc. 38, at 5.)

## A.  Exhaustion

A person who claims to have been discriminated against in violation of Title VII or the ADEA may not bring suit in federal court unless the person has exhausted his administrative remedies.  Randolph v. Ohio Dept. of Youth Serv., 453 F.3d 724, 731 (6th Cir. 2006) (citing Brown v. GSA, 425 U.S. 820, 832 (1976)); Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992); see generally  29 U.S.C. § 626(d) and 42 U.S.C. § 2000e-5(f)(1).  It is the scope of the EEOC charge which determines federal jurisdiction.  Haithcock, 958 F.2d at 676.  If a plaintiff does not first present a claim to the EEOC, generally that claim may not be brought before the federal court.  Id. at 675.

The District contends that Cotton failed to allege a claim of sex discrimination in his EEOC charge, and did not allege any facts supporting discrimination based on sex.  (Doc. 38, at 6.)  Reference to Cotton's EEOC Charge of Discrimination reveals that Cotton did not allege sex discrimination, thus he failed

---

[4] The District sets forth the elements for a prima facie case of discrimination. (Doc. 38, at 5.)  However, an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss.  Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002); Lindsay, 498 F.3d at 439-440.

to exhaust his administrative remedies. (Doc. 34, PX A.) The fifth count of the amended complaint is dismissed for failure to state a claim upon which relief can be granted, specifically, for failure to exhaust. Randolph, 453 F.3d at 731; Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997); Haithcock, 958 F.2d at 675.

## B. Timeliness

In a "deferral state," such as Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file a charge within 300 days of the alleged discriminatory act. Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (ADEA); Joishy v. Cleveland Clinic Fdn., No. 99-3504, 2001 WL 92113, at *1 (6th Cir. Jan. 25, 2001) (Title VII and ADEA); Alexander v. Local 496, Laborers Int'l Union, 177 F.3d 394, 407 (6th Cir. 1997), cert. denied, 528 U.S. 1154 (2000) (citing 42 U.S.C. § 2000e-5(e)). Claims raising allegations of discrete discriminatory acts which are not filed within the appropriate time period are time-barred. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 (2002).

### 1. Age discrimination

The District contends that Cotton failed to file his EEOC charge within 300 days of the alleged discrimination. (Doc. 38, at 6.) The defendant also asserts that Cotton failed to allege any facts that the contested actions were in any way discriminatory based on his age or race. Id. at 7.

Cotton filed his Charge of Discrimination on Jan. 28, 2008, thus any

11

allegations of discrete acts of discrimination predating (approximately) April 3, 2007, would be barred as untimely filed.  Cotton's allegations of discriminatory lay-offs in 2004 and 2006 are clearly time-barred.  See generally doc. 34, at ¶¶ 43-46.

In his amended complaint, Cotton also references his Dec. 12, 2007, "demotion" to Building Substitute, and his May 2008 "demotion" to Area-Wide Substitute at several points, in his summary of damages.  See, e.g., doc. 34, at ¶¶ 47, 58, 63.  However, he does not allege that either re-assignment was motivated by age discrimination.

As to the 2007 event, Cotton alleges that he "was demoted to a Building Substitute due to his failure to pass the Special Education Praxis on short notice." Id. at ¶ 32.  As to the 2008 transfer, he states that "no reason was given for the demotion." Id. at ¶ 34.  He does not specifically allege that either of these events was motivated by age discrimination. Id. at ¶¶ 43-44, 46.  Rather, he appears to attribute both of these demotions to the result of the Special Education Praxis exam.  See generally id. at ¶ 47 ("As a proximate result of Defendant's age discrimination in laying off Plaintiff in 2004, and subsequent adverse employment actions . . . including . . . requirement to take the Special Education Praxis on short notice, and the resulting 2007 Demotion to Building Substitute and the 2008 Demotion to Area Wide Substitute . . .) (emphasis added).  Cotton does not allege that the Special Education Praxis was only administered to him, or to the older employees.  See generally id. at ¶¶ 29- 31.

Similarly, in his memorandum in opposition, Cotton repeats that he "was

demoted to a Building Substitute due to his failure to pass the Special Education Praxis on short notice." (Doc. 39, at ¶ 32.)  Despite the District's contention that he did not allege that either the 2007 or 2008 re-assignments were motivated by age discrimination, Cotton's memorandum in opposition does not expand his factual allegations in any significant way, and in fact states that the facts set forth therein "make up the entire fact situation of this case." (Doc. 39, at p. 9.)

The court agrees that the plaintiff has failed to allege that the 2007 and 2008 re-assignments were discriminatory, as based on his age.  The factual allegations of the amended complaint are not sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, even on the assumption that all the allegations are true.  Compare Sherlock v. FirstEnergy Corp., No. 3:04CV7758, 2005 WL 1868170 (N.D. Ohio Aug. 8, 2005) (allegations that defendant assigned younger workers to better positions).

The first count of the amended complaint is dismissed for failure to state a claim upon which relief can be granted.  Morgan, 536 U.S. at 109, 122; Kassner, 496 F.3d at 237; Joishy, 2001 WL 92113, at *1; 29 U.S.C. § 626(d).

## 2. Race discrimination

Again, Cotton's allegations of racially discriminatory lay-offs in 2004 and 2006 are clearly time-barred.  See generally doc. 34, at ¶¶ 56-58.  The allegations of the amended complaint concerning recent race discrimination are even less specific than those concerning age discrimination.  While Cotton alleges that the 2004 layoffs were racially motivated, doc. 34, at ¶¶ 56-57, he does not specifically allege

(or even imply) that the 2007 and 2008 re-assignments were motivated by racial discrimination.  See generally doc. 34, at ¶¶ 32, 34, 58.  As discussed above, Cotton alleges that he "was demoted to a Building Substitute [in Dec. 2007] due to his failure to pass the Special Education Praxis on short notice."  Id. at ¶ 32; see also doc. 39, at ¶ 32.

The court agrees that the plaintiff has failed to allege that the 2007 and 2008 re-assignments were discriminatory, as based on his race.  The factual allegations of the amended complaint are not sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, even on the assumption that all the allegations are true.

The third count of the amended complaint is dismissed for failure to state a claim upon which relief can be granted.  Morgan, 536 U.S. at 109, 122; Joishy, 2001 WL 92113, at *1; Alexander, 177 F.3d at 407 (citing 42 U.S.C. § 2000e-5(e)).

## IV.  STATE STATUTE OF LIMITATIONS

The District argues that Count Two (age discrimination, in violation of Ohio Rev. Code § 4112.02) is dismissed because it is barred by the statute of limitations. (Doc. 38, at 8-9.)

The Ohio statute specifies that an action alleging age discrimination must be filed "within one hundred eighty days after the alleged unlawful discriminatory practice occurred."  Ohio Rev. Code § 4112.02(N).  Claims not brought within the statutory time period are time-barred.  Bellian v. Bicron Corp., 69 Ohio St.3d 517,

14

520, 634 N.E.2d 608, 610 (1994); Schamer v. Western & Southern Life Ins. Co., No. C-040057, 2004 WL 1800727, at *3 (Ohio Ct. App.  Aug. 13, 2004).  See also Macklin v. Turner, No. 1:03CV2347, 2005 WL 2211170, at *3 n.1 (N.D. Ohio Sept. 9, 2005) (filing of EEOC charge does not toll statute of limitations under § 4112.02).

Because this action was not filed until April 28, 2008, (doc. 1), any allegations of discrete acts of discrimination predating (approximately) Oct. 30, 2007, would be barred as untimely filed.  Cotton's allegations of discriminatory lay-offs in 2004 and 2006 are clearly time-barred under Ohio law.

In addition, the court has determined already that the amended complaint does not contain factual allegations concerning age discrimination sufficient "to raise a right to relief above the speculative level," as regards the Dec. 2007 and May 2008 reassignments.  See, e.g.,  doc. 34, at ¶¶ 32, 53.

The second count of the amended complaint is dismissed for failure to state a claim upon which relief can be granted.  Bellian, 69 Ohio St.3d at 520, 634 N.E.2d at 610; Schamer, 2004 WL 1800727, at *3.

## V.  COUNTS SEVEN AND EIGHT

Cotton added several new claims when he amended his complaint:  Count Seven alleges violations of the January 2006 Arbitration and Award (doc. 34, at ¶¶ 75-80), and Count Eight alleges violations of the 2003-2004 Collective Bargaining Agreement and his individual contract (id., at ¶¶ 81-87).  Cotton alleges that the Arbitration Award was violated because he was not provided with a classroom aide,

15

special education mentor, or supplemental licenses.  (Doc. 34, at ¶¶ 14, 78; doc. 39, at ¶¶ 19, 21.)  He argues that the CBA was violated because the District did not select him for the position of CAD instructor.  (Doc. 34, at ¶ 85.)

The District argues that the seventh and eighth counts fail as a matter of law.  (Doc. 38, at 9-12.)

Ohio law provides that where there is a collective bargaining agreement between a public employer and the employees' union which provides for binding arbitration of grievances, the grievance procedure is the exclusive remedy for covered employees.  Antram v. Upper Scioto Valley Local Sch. Dist. Bd. of Educ., No. 6-08-4, 2008 WL 4831473, at *3 (Ohio Ct. App. Nov. 10, 2008) (citing Brannen v. Kings Local Sch.  Dist. Bd. of Educ., 144 Ohio App.3d 620, 628, 761 N.E.2d 84 (Ohio Ct. App. 2001)); Ohio Rev. Code § 4117.10(A).  Cotton was a unionized employee and subject to the grievance procedure.  See, e.g. doc. 39, at ¶¶ 4-6.  Thus, Cotton has no standing as an individual union member to sue for violations of the collective bargaining agreement (CBA).

In Leon v. Boardman Township, the Supreme Court of Ohio considered the issue of whether a union member represented by his union pursuant to a collective bargaining agreement was a "party" to the arbitration regarding his discharge.  Leon v. Boardman Township, 100 Ohio St.3d 335, 337, 800 N.E.2d 12, 13 (2003).  The court held that, when an employee's discharge or grievance is arbitrated between an employer and a union under the terms of a CBA, the aggrieved employee does not have standing to petition a court to vacate the award, unless the

16

CBA expressly gives the employee an independent right to submit disputes to arbitration.  Leon, 100 Ohio St.3d at 335-336, 800 N.E.2d at 12 (syllabus).  See also Brondes v. International Unions of Police Ass'n, AFL-CIO, Local 71, No. 5-02-33, 2002 WL 31393906, at *2 (Ohio Ct. App. Oct. 24, 2002) (public employee union member is not "party" to CBA); Coleman v. Cleveland Sch. Dist., 142 Ohio App.3d 690, 692, 756 N.E.2d 759, 761 (Ohio Ct. App. 2001) (individual employee lacks standing to vacate arbitration).

The Leon court discussed cases from other jurisdictions finding that such a worker "normally lacks standing independently to initiate grievance procedures, to sue for the breach of the [CBA], or to attack in court the results of the grievance process."  Leon, 100 Ohio St.3d at 340, 800 N.E.2d at 16 (quoting Fleming v. United Parcel Serv., Inc., 604 A.2d 657 (N.J. Super. Ct. App. Div. 1992)).  The court found:

> . . . the proposition that emerges from these cases is that an aggrieved worker whose employment is governed by a collective bargaining agreement that provides for binding arbitration will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, except to the limited extent that the agreement explicitly provides to the contrary.

Id. at 340, 800 N.E.2d at 16.  See also United Elec., Radio & Machine Workers of Am., Local 799 v. Delaware City Sch. Dist. Bd. of Educ., No. 00CAH004010, 2001 WL 1773882, at *4 (Ohio Ct. App. June 11, 2001) (union member cannot bring suit against employer for breach of CBA).

Thus, Ohio law holds that Cotton cannot bring suit for alleged violations of

17

the January 2006 Arbitration and Award.[5]

The motion to dismiss for failure to state a claim upon which relief can be granted is granted as to counts seven and eight of the amended complaint,  because Cotton does not have standing as an individual union member to bring these claims.


## VI.  WORKERS' COMPENSATION CLAIM

The ninth count of the amended complaint was also newly added.  Cotton alleges that the District failed to report his Feb. 2006 work-related injury to the Ohio Bureau of Workers Compensation and therefore he did not receive workers compensation benefits.  (Doc. 34, at ¶¶ 90-96.)

Cotton alleges that he was injured by a chair thrown at him by a student. (Doc. 34, at ¶ 91; doc. 39, at ¶ 17.)  Cotton reported the incident to his supervisors, and an "incident report" was written.  (Doc. 34, at ¶ 92; doc. 39, at ¶ 18.)  Cotton alleges that there is "no evidence that the Defendant Board reported the work related incident to the Ohio Bureau of Workers Compensation as required."  (Doc. 34, at ¶ 93.)  More specifically, the District "failed to file a workers' compensation claim or offer the Plaintiff workers' compensation benefits."  (Doc. 39, at ¶ 18.)

The Ohio Administrative Code provides that "[t]he 'First Report of Injury' form (FROI-1) for applying for payment from the state insurance fund due to an injury, occupational disease, or death shall be completed by the employee."  Ohio

---

[5] Cotton does not allege that the CBA explicitly provides to the contrary.

18

Admin. Code § 4123-3-08(A)(1) (emphasis added).  Thus, it is the employee's duty to see that written notice of his claim is filed with the Workers' Compensation Bureau. Brady v. York Internatl. Borg Warner, 62 Ohio App.3d 739, 741, 577 N.E.2d 435, 436 (Ohio  Ct. App. 1989); see also Greenwalt v. Goodyear Tire & Rubber Co., 164 Ohio St. 1, 7, 128 N.E.2d 116, 120 (1955) (claimant's duty to see that application properly filed within statutory period of limitation).  The employer's duty is "to assist injured or disabled employees in the preparation and submission of reports for compensation and/or benefits."  Ohio Admin. Code § 4123-3-08(A)(5) (emphasis added).

The Code also provides the place and manner of filing applications for benefits:  "Any first report of injury shall be accepted for filing in any office of the bureau or industrial commission during working hours, and reports may be filed by mail or reported by telecommunication."  Ohio Admin. Code § 4123-3-08(C).  The statute of limitations for submission of workers' compensation claims is two years from the date of the injury.  Ohio Admin. Code § 4123-3-08(D)(1).

Cotton alleges that the District improperly "failed to file a workers' compensation claim" on his behalf.  (Doc. 39, at ¶ 18; doc. 34, at ¶ 93.)  Ohio law does not require the employer to file a workers compensation claim; rather, the injured employee is responsible for the timely filing of his claim.  Brady, 62 Ohio App.3d at 741, 577 N.E.2d at 436; Ohio Admin. Code § 4123-3-08(A)(1).

Cotton also alleges that the District improperly "failed to offer the Plaintiff workers' compensation benefits."  (Doc. 39, at ¶ 18; doc. 34, at ¶¶ 95-96.)  An

19

employer cannot "offer" workers' compensation benefits.  Although the employer indicates its acceptance or rejection of the validity of the claim filed, certification by the employer "shall not be determinative of compensability."  Ohio Admin. Code § 4123-3-08(B)(1) and (3).  Every claim "is subject to administrative review as to compensability."  Ohio Admin. Code § 4123-3-08(B)(3).

The ninth count of the amended complaint is dismissed for failure to state a claim upon which relief can be granted.


## VII.  REMAINING STATE LAW CLAIMS

The District did not seek dismissal of counts four (racial discrimination, in violation of Ohio Rev. Code § 4112.02(A)) and six (sex discrimination, in violation of Ohio Rev. Code § 4112.02(A)).  Those two claims remain.

The remaining claims are based on Ohio law.  See doc. 34, Am. Compl., at ¶¶ 60-64, 70-74.  Since the federal causes of action are dismissed, the state causes of action are dismissed for lack of jurisdiction.  United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966).  This principle may be raised sua sponte by the court. See Abramson v. Abramson, 991 F.2d 799, 1993 WL 130193 at *4 (7th Cir. 1993) (TABLE, text in WESTLAW); Norton v. Cobb, 744 F.Supp. 798, 800-801 (N.D. Ohio 1990).

## VIII.  SUMMARY

The defendant School District's motion to dismiss (doc. 38) counts 1, 2, 3, 5, 7, 8, and 9 is GRANTED.  Those claims are dismissed with prejudice.

The District did not seek dismissal of counts four (racial discrimination, in violation of Ohio Rev. Code § 4112.02(A)) and six (sex discrimination, in violation of Ohio Rev. Code § 4112.02(A)), therefore, those two claims are dismissed by this court without prejudice, for lack of jurisdiction.

IT IS SO ORDERED.

June 11,  2009            /s/ Kenneth S. McHargh
                         Kenneth S. McHargh
                         United States Magistrate Judge

21